**SCHEDULE FOR THE PERIOD OF INSURANCE COMMENCING ON**
**December 31, 2000**

1.  POLICY NUMBER:                          1015-00

2.  NAME(S) OF THE FIRM:                    ARTER & HADDEN LLP
                                            and any associated or subsidiary entity that is engaged in
                                            the provision of professional services covered under
                                            Section I. of the policy provided that each and every entity
                                            referenced to in the foregoing is under the management of
                                            one or more partners of Arter & Hadden LLP; and others
                                            as more fully described in the Policy.

3.  PREDECESSORS:                           Any and all predecessor firms.

4.  PRINCIPAL ADDRESS OF THE FIRM:          1100 Huntington Building
                                            Cleveland, OH 44115-1475

5.  PERIOD OF INSURANCE:                    FROM:-  December 31, 2000

                                            TO:-    December 31, 2001

                                            Both days at 11:59 p.m. Standard Time at the PRINCIPAL
                                            ADDRESS OF THE FIRM.

6.  AUTOMATIC EXTENSION PERIODS:            FROM:-  December 31, 2001

                                            TO:-    December 31, 2002

                                            and

                                            FROM:-  December 31, 2002

                                            TO:-    December 31, 2003

                                            Both periods at 11:59 p.m. Standard Time at the
                                            PRINCIPAL ADDRESS OF THE FIRM.

7.  PREMIUM: (a)    US$1,179,750    For the period from 11:59 p.m.
                                   December 31, 2000 to 11:59 p.m.
                                   December 31, 2001

            (b)    US$1,179,750    For the period from 11:59 p.m.
                                   December 31, 2001 to 11:59 p.m.
                                   December 31, 2002

            (c)    US$1,179,750    For the period from 11:59 p.m.
                                   December 31, 2002 to 11:59 p.m.
                                   December 31, 2003

- 2 -

8. LIMITS:

    A.    PER CLAIM SUM INSURED:                   $50,000,000
           (inclusive of costs, charges and expenses)

    B.    AGGREGATE SUM INSURED:               $100,000,000
           (inclusive of costs, charges and expenses)

    C.    CONDITIONAL ADDITIONAL CIRCUMSTANCE
           AGGREGATE SUM INSURED:               $5,000,000
           (inclusive of costs, charges and expenses)

    D.    EXTENDED REPORTING PERIOD AGGREGATE SUM INSURED:    $50,000,000
           (inclusive of costs, charges and expenses)

9. RETENTION:

    A.    Single Claim Retention:                 $1,000,000
           (Clause IV-B (a))

    B.    Annual Aggregate Retention:           $2,000,000
           (Clause IV-B (a))

    C.    Maintenance Retention:               $25,000
           (Clause IV-B (a))

10. DATE OF APPLICATION:           October 5, 2000

11. PERSONS TO BE INCLUDED AS EMPLOYEES:    TBA

12. INSURERS' REPRESENTATIVE:        Mendes & Mount, LLP
                                   750 Seventh Avenue
                                   New York, New York
                                   U.S.A.  10019-6829

13. INSURED's REPRESENTATIVE:       Aon Risk Services, Inc. of New York
                                     Professional Services Group
                                   Two World Trade Center
                                   New York, New York
                                   U.S.A.  10048-1096

ARTER & HADDEN LLP

MINIDOM POLICY NO. 1015-00

ENDORSEMENT NO. 5

LATERAL-HIRE PRIOR ACTS ENDORSDEMENT

The purpose of this Endorsement is to amend this Policy to provide coverage, subject to the terms, conditions, exclusions and limitations stated below and elsewhere in this Policy, to each INSURED in respect of any claim made against such INSURED during the PERIOD OF INSURANCE by reason of any ACT, wherever it was or may have been committed or alleged to have been committed by such INSURED, in his or her professional capacity as Attorney, Counselor at Law or Notary, prior to the time that such INSURED joined the FIRM as a partner or employee.

    (a)  The following subparagraph C. is added to Clause I of the Policy:

"C. by an INSURED (other than an INSURED within the meaning of Clause II-B(f) of the Policy) acting in his or her professional capacity as Attorney, Counselor at Law or Notary prior to such INSURED becoming a partner or employee of the FIRM. In extension and not in limitation of the foregoing such work shall be deemed to include work as arbitrator, mediator, lobbyist, agent to title insurance company and/or designated issuing attorney to a title insurance company, administrator, executor, trustee, receiver, conservator, guardian, committee for incompetent or other fiduciary, or similar agent or advisor."

    (b)  Clause III-G of this Policy is deleted in its entirety.

    (c)  Coverage under Clause I-C of this Policy with respect to an INSURED shall automatically terminate on the date such INSURED withdraws from or terminates his or her employment with the FIRM, except that for the purposes of this Endorsement such INSURED shall not be deemed to have withdrawn from or otherwise terminated his or her employment with the FIRM in the event of (i) such INSURED's death or (ii) such INSURED's retirement from the practice of law or for total disability so long as such INSURED remains so retired or totally disabled.

    (d)  With respect to coverage under Clause I-C of this Policy, this Endorsement excludes:-

        1.  Any claim arising out of any ACT of any other person or entity (including another INSURED) for which an INSURED is or may be vicariously or indirectly liable (whether by operation of law or as a result of agreement). For purposes of this exclusion, the term vicarious or indirect liability is intended to mean, among other things, the liability of an INSURED for failure to supervise the work of his or her partners, or others, if such INSURED had no direct involvement in the matter in connection with which that work was performed.

        2.  Any claim arising out of any ACT of an INSURED which occurred at a time when such INSURED had his or her license to practice was revoked or suspended or was not in good standing to practice law in any of the States of the United States or the District of Columbia.

ARTER & HADDEN LLP

MINIDOM POLICY NO. 1015-00

ENDORSEMENT NO. 5

LATERAL-HIRE PRIOR ACTS ENDORSDEMENT (Cont'd)

This Endorsement only applies to those INSUREDS who joined the FIRM prior to 12:01 a.m. April 1, 1996 and specifically does not apply to the following individuals:.

Russell P. Austin
Julian Bach
Lucie Adele Baker
Lisa Barsoomian
Rodney Bell
Susan C. Bergeman
Jennifer L. Blum
Terri L. Bowman
Kathleen M.K. Brahn
D. David Carroll, II
James Chapman
Gene Chiarelli
Lee A. Chilcote
S. Paige Christopher
Steve Cote
Eric Dean
Elaine Deane
David R. Decker
James K. Dierking
Thomas A. Douvan
Robert L. Eblin
Todd O. Edmister
Jack W. Fleming
Jules L. Garel
Lauren L. Goldberg
Ronald M. Griffith
David G. Grunick
Steven Gubner
Holly A. Hayes
Marie Ellen Haynes
John M. Heffernan
Joel Held
Carol E. Hernandez
David M. Hershorin
Bruce Holden
Susan E. Hollander

**ARTER & HADDEN LLP**

**MINIDOM POLICY NO. 1015-00**

**ENDORSEMENT NO. 5**

**LATERAL-HIRE PRIOR ACTS ENDORSDEMENT (Cont'd)**

Stephen P. Hollman
John Hosack
Christine Howson
Christine E. Howson
Mary Jo Hudson
Christopher J. Husa
Jeffrey R. Johnson
Tammy Kahane
William K. Keane
Kathryn L. Kempton
Timothy Kindela
Joseph D. King
Craig G. Kline
Henry Kohlmann
Arthur V. Lambert
David Laufer
Donald E. Longwell, Jr.
Sarah Lynn
Michelle M. Mc Aloon
William Mc Crae
Dennis McAteer
Mark McLean
Terry J. Mollica
Jerry A. Moore, III
Joseph J. Morford
James W. Morrison
Martin J. Mullen
John F. Myers
Joseph J. Nardulli
Maura B. O'Conner
Martin H. Orlick
Richard R. Pace
Jayne A. Peeters
Thomas J. Piatak
Joseph Quinby
Keith A. Raker
Ted L. Ramirez
Brian D. Robinson
John T. Ronan

**ARTER & HADDEN LLP**

**MINIDOM POLICY NO. 1015-00**

**ENDORSEMENT NO. 5**

**LATERAL-HIRE PRIOR ACTS ENDORSDEMENT (Cont'd)**

Jane H. Root
Neil Rubenstein
Peter Rundle
James G. Ryan
Mc Kinley H. Sauer
David J. Shaffer
Adam Smith
William C. Staley
Errol M. Stone
Kenneth A. Stump
Neil M. Sunkin
John R. Tate
Naomi S. Travers
Karen V. Uchiyama
Robert J. Ungar
Dominick M. Valencia
Mark K. Velasco
Jon E. Warga
Ronald Warner
Michael J. Willson
Elizabeth L. Yingling

- 3 -

14. **ENDORSEMENTS:**    1. Optional policy extension endorsement.
    2. Predecessor firms amended endorsement
    3. Claims procedure amended endorsement
    4. Law to govern amended endorsement
    5. Lateral hire prior acts endorsement

By:    **Columbia Casualty Company**
       33.4% part of each dollar of limit and premium expressed
       hereon and of payments hereunder

       _____
       Authorized Representative
       Date:    _____

By:    **Nutmeg Insurance Company**
       33.3% part of each dollar of limit and premium expressed
       hereon and of payments hereunder

       _____
       Authorized Representative
       Date:    _____

**St. Paul Surplus Lines Insurance Company**
33.3% part of each dollar of limit and premium expressed
hereon and of payments hereunder

_____
Authorized Representative
Date:    _____

MINIDOM POLICY NO. 1015-00

PROFESSIONAL INDEMNITY POLICY

NOTICE

THIS IS A NON-CANCELABLE POLICY [EXCEPT AS DESCRIBED IN CLAUSE IV-C(b) AND D] ISSUED BY COLUMBIA CASUALTY COMPANY, NUTMEG INSURANCE COMPANY AND ST. PAUL SURPLUS LINES INSURANCE COMPANY SUBJECT TO ITS TERMS, CONDITIONS, EXCLUSIONS AND LIMITATIONS, IS APPLICABLE ONLY TO CLAIMS MADE AGAINST INSUREDS AS DESCRIBED HEREIN DURING THE PERIOD OF INSURANCE OF THIS POLICY AND THE EXTENDED REPORTING PERIOD. THESE INSURERS MAY NOT BE SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE.    STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE TO YOU SHOULD THESE INSURERS NOT BE ABLE TO MEET THEIR OBLIGATIONS.    THE COVERAGE PROVIDED BY THIS POLICY IS INDEMNITY COVERAGE. IT IS A COSTS INCLUSIVE POLICY.

Whereas the FIRM (as defined in Clause II-A hereof) has made to the INSURERS hereon a written Application of Insurance (the "Application") bearing the date stated in Item 10 of the Schedule attached hereto (the "Schedule") and containing particulars and statements which it is hereby agreed are material and the basis of this contract, and has paid or has agreed to pay the sums stated in Item 7 of the Schedule as consideration to the INSURERS:

I.    COVERAGE:

This Policy is to indemnify, subject to its terms, conditions, exclusions and limitations, the INSUREDS in respect of any CLAIM made against the INSUREDS during the PERIOD OF INSURANCE by reason of any ACT whenever or wherever it was or may have been committed or alleged to have been committed:

A.    by an INSURED or any other person or entity in the conduct of any business conducted by or on behalf of the FIRM in its professional capacity as Attorneys, Counselors at Law, Notaries, or Consultants or

B.    by any partner, retired partner or employee of the FIRM acting in his or her professional capacity as Attorney, Counselor at Law or Notary or Consultant (whether or not in the name of the FIRM), provided always that a portion of the fee (if a fee is charged and regardless of whether such fee is actually collected) accruing from such work shall inure to the benefit of the FIRM or such work is performed with the prior written approval of the FIRM. In extension and not in limitation of the foregoing, such work shall be deemed to include work as arbitrator, mediator, lobbyist, agent to title insurance company and/or designated issuing attorney to a title insurance company, administrator, executor, trustee, receiver, conservator, guardian, committee for incompetent or other fiduciary, or similar agent or advisor.

If, whether with or without the acquiescence of the FIRM, a fee is charged (regardless of whether such fee is actually collected) by any partner, retired partner, or employee of the FIRM acting in his or her capacity as Attorney, Counselor at Law, or Notary or Consultant and no portion of such fee in fact inures to the benefit of the FIRM, then this clause shall not be applied to deny coverage to any INSURED (including the FIRM and/or the INSURED who performed the work in question) to whose benefit a portion of such fee is not intended to inure.

## II.   DEFINITIONS:

A.   The term "the FIRM" shall mean the organization carrying on business under the name as stated in Item 2 of the Schedule, whether as a partnership, professional corporation or association, or otherwise, and shall also include its predecessors as stated in Item 3 of the Schedule. If so listed in Item 2 of the Schedule, the FIRM may include more than one partnership or professional corporation or association. Changes in the name of the FIRM during the PERIOD OF INSURANCE (or the EXTENDED REPORTING PERIOD if acquired) shall not affect coverage under this Policy, but any such change shall be reported to the INSURERS through INSURED'S REPRESENTATIVE promptly.

B.   The term "INSURED" shall mean each of the following:

(a)   the FIRM;

(b)   each partner of the FIRM and any person who may at any time and from time to time be a partner in the FIRM;

(c)   each partner no longer in the FIRM who was a partner or employee in the FIRM at the time of the ACT and/or the estate of such person (whether or not such person died while a partner);

(d)   each employee of the FIRM, any other person who may at any time and from time to time be an employee of the FIRM, each former employee of the FIRM, each contract employee of the FIRM, and/or estate of any such person in respect of any ACT committed in the course of such person's employment or contract employment by the FIRM in the conduct of the FIRM's business;

(e)   each former partner and former employee in respect of services performed on behalf of the FIRM subsequent to retirement or other withdrawal, provided always that a portion of the fee (if a fee is charged and regardless of whether such fee is actually collected) accruing from such work shall inure to the benefit of the FIRM or such work is performed with the prior written approval of the FIRM;

(f)   each other person specifically named in Item 11 of the Schedule who for all purposes of this Policy shall be deemed by the FIRM to be an employee of the FIRM;

(g)   each person designated "counsel" or "of-counsel" to the FIRM shall be considered, for purposes of this Policy, as a partner or employee of the FIRM depending upon such person's actual status in the FIRM (and shall be deemed to be an employee of the FIRM if such person's actual status is not determinable), provided that coverage under this Policy shall be limited to ACTS committed or alleged to have been committed by any such person in his or her capacity as "counsel" or "of-counsel" to the FIRM and provided further that a portion of the fee (if a fee is charged and regardless of whether such fee is actually collected) accruing from work done by such person shall inure to the benefit of the FIRM.

12-096-00B
1/9/01

S:\SHARE\PSD\error\2001\Documents\Wording.doc2

A person's status as an INSURED as hereinabove provided shall be determined, from time to time, in accordance with his or her actual status in the FIRM. The FIRM shall not be required to inform the INSURERS of any change in the status of any individual INSURED prior to the expiration of the PERIOD OF INSURANCE.

C.   The term "ACT" shall mean any act, failure to act, error or omission arising out of the INSURED'S professional capacity as Attorney, Counselor at Law or Notary or Consultant, in extension and not in limitation of the foregoing, such work shall be deemed to include work as arbitrator, mediator, lobbyist, agent to title insurance company and/or designated issuing attorney to a title insurance company, administrator, executor, trustee, receiver, conservator, guardian, committee for incompetent or other fiduciary, or similar agent or advisor whether of acts, facts, law or otherwise (including, without limitation, breach of contract; inducement of breach of contract; false arrest, detention or imprisonment; wrongful entry or eviction or other invasion of private occupancy; malicious prosecution; libel or slander; violation of right of privacy), or any allegation thereof.

D.   (a)   The term "PARTNER" shall include (i) each stockholder-employee of the FIRM if it is carrying on practice as a professional corporation or association, and (ii) each member of the FIRM if it is carrying on practice as a limited liability company or a limited liability partnership.

  (b)   The term "PARTNER" shall also include each stockholder-employee of a professional corporation or association which is a partner of the firm, as well as the professional corporation or association itself. For all purposes of this policy, however;

    (i)   if a professional corporation or association has only one stockholder-employee, both the stockholder-employee and the professional corporation or association of which he or she is a stockholder-employee shall be deemed one and the same INSURED, and

    (ii)   if a professional corporation or association has more than one stockholder-employee, each stockholder-employee and the professional corporation or association of which he or she is a stockholder-employee shall be deemed one and the same INSURED (but only to the extent of such stockholder-employee's pro rata share of the assets of such professional corporation or association, including such professional corporation's or association's pro rata share of the assets of the FIRM).

E.   The term "PERIOD OF INSURANCE" shall mean the period stated in Item 5 of the Schedule.

F.   (a)   The term "CLAIM" shall include any written notice received by an INSURED from or on behalf of any person that it is the intention of such person to hold the INSURED responsible for the results of any ACT. Without limiting the foregoing, the term CLAIM shall include written notice of the commencement of a lawsuit, arbitration or other proceeding against an INSURED; an express written unconditional demand for money or some other redress made against an INSURED; an express written unconditional threat to take legal action against an INSURED; and/or a written request made to an INSURED to toll or waive a statute of limitations relating to a potential CLAIM.

(b)    The term "CLAIM" shall include any demand against an INSURED for compensatory damages, including without limitation a demand for punitive damages and/or penalties in the nature of compensatory damages. The term CLAIM shall also include a CLAIM for injunctive relief or administrative sanctions brought by or before a Federal or State regulatory agency (excluding State Supreme Court or Bar Association disciplinary or grievance procedures), provided that such matter shall constitute a CLAIM only after the date that the INSURERS are notified by the FIRM of such CLAIM or the circumstances which may give rise to such a CLAIM and the INSURERS' liability for costs, charges and expenses, in accordance with the terms, conditions, exclusions and limitations of this Policy, are prospective only from the date of such notice.

Although the term "CLAIM" shall not include State Supreme Court or Bar Association disciplinary or grievance procedures, the Insurers may at their option, and subject to the terms, conditions, exclusions and limitations of this Policy, reimburse an INSURED for costs, charges and expenses attributable to any State Supreme Court or Bar Association disciplinary or grievance procedures.

(c)    All CLAIMS (regardless of whether they involve one or more INSUREDS) arising out of the same ACT or related ACTS shall be considered a single CLAIM and, consistent with the provisions of Clause IV-F of this Policy, such single CLAIM shall be deemed to have arisen in the PERIOD OF INSURANCE in which such single CLAIM was first reported to the INSURERS.

G.    The term "RETENTION" means the applicable RETENTION as provided in Clause IV-B and shall be calculated as the net amount actually paid, by the INSUREDS after excluding all amounts received by the INSUREDS, without the prior written consent of the INSURERS, from any sources including, without limitation, by way of contribution from other parties involved in the CLAIM in question; except that there shall not be excluded in determining whether the RETENTION has actually been paid by the INSUREDS amounts received by the INSUREDS from insurance policies not covering professional liability risks.

III.    EXCLUSIONS:

This Policy excludes:

A.    any CLAIM or circumstance required to be listed in response to questions 4 or 5 of the Application or in respect of which the INSUREDS, before the commencement of this Policy, have given written notice to the INSURERS on any other policy in force previous hereto;

B.    any CLAIM for which the INSUREDS are entitled to indemnity hereunder which is insured by any other policy or policies (whether or not such other policy or policies cover professional liability) under which payment of the CLAIM is actually made, except in the case of any excess (which results from either the higher limits or broader coverage of this Policy) beyond the amounts paid under any such other policy or policies.

The INSUREDS agree that this Policy is issued on the condition that with respect to either (i) ACTS committed (or alleged to have been committed) in whole or in part prior to the inception date of this Policy or (ii) any other policy or policies issued prior to the inception date of this Policy which provide concurrent coverage of ACTS also covered by this Policy, then this Clause III-B will only permit recovery excess of the amounts paid under any other policy or policies, (a) regardless of the form of such other policy or policies or whether the INSUREDS' coverage under such other policy or policies arises as a result of the exercise by the INSUREDS of extended discovery rights thereunder, and (b) notwithstanding any provision(s) of such other policy or policies which purport to exclude coverage of the INSUREDS' ACT or to limit the INSUREDS' recovery to a pro rata share of loss (including costs, charges and expenses) incurred or to an amount in excess of the coverage under this Policy, as a result of concurrent coverage of ACTS covered by this Policy.

The INSUREDS further agree, and this Policy is issued on the further condition that with respect to ACTS committed (or alleged to have been committed) entirely on or after the inception date of this Policy and which are concurrently covered under any other policy or policies issued on or after such inception date, this Clause III-B will only permit recovery excess of the amounts paid under any such other policy or policies, notwithstanding any provision(s) of such other policy or policies which purport to exclude coverage of the INSUREDS' ACT or to limit the INSUREDS' recovery to a pro rata share of loss (including costs, charges and expenses) incurred as a result of concurrent coverage of ACTS covered by this Policy. If such other policy or policies purport to limit the INSUREDS' recovery thereunder to an amount in excess of the limits under this Policy as a result of concurrent coverage of ACTS covered by this Policy, then coverage under this Policy shall, until such time as the applicable limits of such other policy or policies have been exhausted, be limited to an equal share, contributing dollar-for-dollar, of loss (including costs, charges and expenses) incurred, and thereafter shall continue on an excess basis as set forth in the first paragraph of this Clause III-B.

Notwithstanding any other provision of this Clause III-B, the INSUREDS further agree, and this Policy is issued on the condition that, this Clause III-B will only permit coverage excess of amounts paid under any other policy or policies, whether issued before or after the inception date of this Policy, that provides specific coverage to the INSUREDS for fidelity, theft, crime or similar risks.

For purposes of this Clause III-B, the terms "amounts paid under any other policy or policies" and "amounts paid under any such other policy or policies" shall be deemed to include all amounts which would have been paid to the INSUREDS if they had complied in full with all of the conditions of and taken full advantage of all of their rights under such other policy or policies.

This exclusion shall not apply to any policies specifically written as excess insurance over the primary limits of liability of this Policy.

If a CLAIM falls both within this exclusion and the exclusion of Clause III-A, the exclusion of Clause III-A shall be deemed to apply.

C.   any CLAIM made by an INSURED or former INSURED against another INSURED unless it arises out of an ACT committed by or alleged to have been committed by such other INSURED in his or her rendering or failing to render professional services as Attorney, Counselor at Law or Notary or Consultant;

D.   any CLAIM alleging the fraud or dishonesty of any INSURED, if a judgment or other final adjudication shall establish, or if such INSURED shall admit, that active and deliberate fraud or dishonesty was committed, or personally acquiesced in, by such INSURED with actual fraudulent or dishonest purpose and intent. However, nothing contained in the foregoing shall exclude coverage to the FIRM, or to any other INSURED who neither was so adjudged nor has admitted to have committed or personally acquiesced in such fraud or dishonesty as described above, except that this Policy shall then only pay in excess of the full extent of the assets in the FIRM of any INSURED who was so adjudged or has admitted to have committed or personally acquiesced in such fraud or dishonesty as described above, and any other personal assets of such INSURED recovered by the FIRM (or any other INSURED) in connection with such CLAIM shall inure, to the extent of the amount paid by this Policy, to the benefit of the INSURERS. Solely for purposes of this Clause III-D and Clause IV-J, the term "personally acquiesced" shall mean fraudulently or dishonestly acquiescing in or remaining passive after having personal knowledge of fraud or dishonesty prior to or contemporaneously with the time that such fraud or dishonest occurs;

E.   any CLAIM for bodily injury to, or sickness, disease or death of any person, or injury to or destruction or any tangible property, arising out of an ACT of any INSURED unless it arises out of an ACT committed in his or her professional capacity as Attorney, Counselor at Law, Notary or Consultant;

F.   any CLAIM for fines or penalties in the nature of fines against any INSURED, but this exclusion shall not apply to costs, charges and expenses incurred in the defense of any CLAIM otherwise covered by this Policy which demands fines or penalties in the nature of fines in addition to compensatory damages;

G.   any CLAIM against an INSURED arising out of any ACT by such INSURED which occurred prior to the time that such INSURED became a partner or employee of the FIRM, whether through combination of firms or otherwise;

H.   any CLAIM arising out of any ACT occurring in respect of any client or former client of any INSURED at a time when any INSURED, while an INSURED, was serving as an "executive officer" of such client or former client which:

   (i)   was subject, or as a result of the transaction(s) in connection with which the ACT(S) occurred was about to become subject, to the reporting requirements of §13 of the Securities Exchange Act of 1934, as amended (the "Act"), or

   (ii)  would have been subject, or was about to become subject, to such reporting requirements but for the provisions of §12(g)(2)(B), (C), (E), (F), (G) or (H) of the Act, or

(iii) was subject, or as a result of the transaction(s) in connection with which the ACT(S) occurred was about to become subject, to reporting requirements, substantially similar to those under §13 of the Act, imposed by the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, or the Federal Home Loan Bank Board (or its successor, the Office Thrift Supervision), and any successor of any thereof pursuant to §12(i) of the Act.

References herein to various sections of the Act refer to those sections of the Act as they are amended from time to time.

For the purposes of this Clause III-H:

(a) the term "executive officer" shall mean the Chairman of the Board, Vice Chairman of the Board, President, chief executive officer, chief operating officer, chief financial officer, or a general partner;

(b) the term "client or former client" shall include any entity controlling, controlled by or under common control with such client or former client; and

(c) the right, directly or indirectly, to vote fifty percent (50%) or more of the voting shares or to elect fifty percent (50%) or more of the directors of an incorporated entity or to receive fifty percent (50%) or more of the profits of an unincorporated organization shall constitute "control" of such entity or organization.

I.   any CLAIM arising out of any INSURED acting in his or her capacity as a director and/or officer, other than an "executive officer" as defined in exclusion H above, of any entity except that this exclusion shall not apply to any INSURED acting in his or her professional capacity as Attorney, Counselor at Law or Notary or Consultant.

For purposes of this Clause III-I, the term "director and/or officer" shall mean a member of the governing body (whether designated a "director", "trustee", "member" or otherwise) and any individual (howsoever designated) charged under law or relevant organic documents with the overall or day-to-day management of the business and/or affairs of an entity;

J.   any CLAIM against (a) any outside organization, whether carried on as a proprietorship, a partnership, a trust or in an incorporated form, not listed in Item 2 of the Schedule or (b) an INSURED arising solely out of the ownership by such INSURED of an interest in any outside organization.

IV.   CONDITIONS:

A.   LIMITS:

(a) The limit of liability of the INSURERS shall not exceed the PER CLAIM SUM INSURED stated in Item 8A of the Schedule for a single CLAIM made against the INSUREDS during the PERIOD OF INSURANCE (regardless of whether such claim involves one or more INSUREDS), inclusive of costs, charges and expenses incurred in connection with such CLAIM.

S:\SHARE\PSD\user\3001\Documents\Wording.doc7

(b)    The limit of liability of the INSURERS shall not exceed the AGGREGATE SUM INSURED stated in Item 8B of the Schedule for all CLAIMS made against all INSUREDS during each PERIOD OF INSURANCE, inclusive of costs, charges and expenses incurred in connection with such CLAIMS.

(c)    Notwithstanding the provisions of Clause IV-A(a), if all CLAIMS made against all INSUREDS during a PERIOD OF INSURANCE, inclusive of costs, charges and expenses incurred in connection with such CLAIMS, reach the AGGREGATE SUM INSURED for such PERIOD OF INSURANCE, then the AGGREGATE SUM INSURED for such PERIOD OF INSURANCE shall be increased, in respect of "subsequent CLAIMS" that relate to such PERIOD OF INSURANCE only, by the amount of the CONDITIONAL ADDITIONAL CIRCUMSTANCE AGGREGATE SUM INSURED stated in Item 8C of the Schedule. For purposes of this Clause IV-A(c), a "subsequent CLAIM" relating to a particular PERIOD OF INSURANCE shall mean a CLAIM made subsequent to such PERIOD OF INSURANCE that, as a result of Clause IV-F(b), is treated as having been made during such PERIOD OF INSURANCE, but only if the circumstance reported to the INSURERS pursuant to Clause IV-F(b) out of which such CLAIM subsequently arose was reported to the INSURERS during the PERIOD OF INSURANCE in which the INSUREDS first had a reasonable basis to believe that such circumstance might result in a CLAIM being made.

**B.**    <u>RETENTION</u>:

(a)    With respect to each CLAIM covered hereunder, this policy will only pay excess of the Single Claim Retention set forth in Item 9A of the Schedule, which amount shall include, costs, charges and expenses. If the total paid by the INSUREDS for all CLAIMS under this policy exceeds the Annual Aggregate Retention set forth in Item 9B of the Schedule, including costs, charges and expenses, then the Maintenance Retention set forth in Item 9C of the Schedule shall apply. If because of partial exhaustion, the remaining balance of the Annual Aggregate Retention set forth in Item 9B of the Schedule is less than the Maintenance Retention set forth in Item 9C of the Schedule, then the Maintenance Retention set forth in Item 9C shall apply to each and every claim and in no event shall the INSURERS be liable for any amounts on any CLAIM until the INSURED has paid the applicable RETENTION or the Maintenance Retention, whichever is greater.

(b)    It shall be a condition precedent to an INSURED's right to be indemnified under this Policy in respect of any CLAIM made against such INSURED, including for costs, charges and expenses incurred in connection therewith, that the INSUREDS pay, as the case may be, costs, charges and expenses and/or amounts due on the CLAIM as they become due up to the amount of the RETENTION.

C.  **PREMIUMS:**

(a)  This Policy is issued for the Premium as stated in Item 7(a) of the Schedule. The INSURERS have agreed to Automatic Extensions of this Policy for the Premiums stated in Items 7(b) and 7(c) of the Schedule, which Automatic Extension Premiums are subject to an adjustment only in the event that there shall have been an increase or decrease in the number of attorneys at the FIRM of more than 10% since the most recent anniversary (or policy inception if no previous anniversary is applicable). Any adjustments will be made only for that number of attorneys in excess of the 10% increase or decrease.

(b)  (i)  In the event that the FIRM fails to pay the INSURERS the Premium, or any installment of the Premium, for this Policy within forty-five (45) days after it is due, the INSURERS may, at their option, terminate this Policy effective (A) as of the inception of the PERIOD OF INSURANCE for which such Premium payment is due or (B) as of the due date of such Premium payment or quarterly installment by delivery of notice to the FIRM in person or by certified or registered mail, as evidenced by return receipt, telex, facsimile transmission, or courier to that effect. If the FIRM pays to the INSURERS the Premium payment due in full prior to the delivery by the INSURERS of such notice of termination, the INSURERS' right to terminate for non-payment shall lapse. Termination of this Policy by the INSURERS pursuant to Clause IV-C(b)(i) shall not relieve the INSUREDS of the obligation to pay PREMIUM for that part of the PERIOD OF INSURANCE for which this Policy was in effect.

(ii)  In the event this Policy is terminated by the INSURERS pursuant to Clause IV-C(b)(i), the INSURERS shall refund to the FIRM that portion of the PREMIUM for the PERIOD OF INSURANCE to the extent actually paid covering the period between the effective date of such termination and the last day of such PERIOD OF INSURANCE.

(c)  When any firm is merged into or acquired by the FIRM, or an individual or a group of individuals who formerly practiced at another firm become partners and/or employees of the FIRM, this Policy shall indemnify the FIRM (subject to its terms, conditions, exclusions and limitations) in respect of any CLAIM first made against the merged or acquired firm or individual(s), but only for ACTS committed subsequent to the date of their joining the FIRM, and such merged or acquired firm or individual(s) shall be included hereunder effective from the date of joining as additional INSUREDS. It is understood and agreed however that:

(i)  when any such merger, acquisition or group of individuals who practiced together at another firm increases the total number of attorneys of the FIRM, as at the preceding anniversary date, by more than 10%, then within 30 days of the merger or acquisition, the FIRM shall notify the INSURERS through INSURED'S REPRESENTATIVES as named in the Schedule; and

S:\SHARE\PSD\wter\3001\Documens\Wording.doc9

(ii)   within 30 days of receipt of notification the INSURERS agree to add the merged or acquired firm or individual(s) subject to such terms and conditions as the INSURERS, in their discretion, may require. If however within 30 days of receiving notification of the merger or acquisition the INSURERS do not otherwise require any terms and conditions to the merger or acquisition, then the additional premium on the number of new attorneys shall be calculated at pro rata (from the date of merger or acquisition) of 100% of the annual per capita rate charged by the INSURERS for this Policy, but only for that number of attorneys in excess of the increase.

Unless specifically agreed by addendum hereto, such merged or acquired firm, or firm at which such group of individuals formerly practiced, shall not be deemed to be a "Predecessor in Business" of the FIRM irrespective of whether or not notification to the INSURERS is required as described above.

D.   <u>CANCELLATION AND AUTOMATIC EXTENSION PROVISIONS</u>

(a)   This Policy is non-cancelable except as noted in Clause IV.C (b), for non-payment of the PREMIUM or any installment of the premium or in the event that:-

(i)    One or more INSURERS have their authority to act as a Surplus Lines Insurer or an Authorized Insurer suspended or withdrawn by any applicable regulatory body or;

(ii)   One or more INSURERS fail to maintain a rating of at least "A-" by A.M. Best and/or Standard & Poor's or;

(iii)  One or more INSURERS is declared insolvent or placed under the protection of Chapter 11 or similar proceedings;

(iv)  One or more INSURERS is acquired by or merged with another entity possessing a rating of less than "A-" by either A.M. Best and/or Standard & Poor's.

Cancellations as a result of IV.D. (a) (i), (ii) or (iii), (iv) above may be instituted at the sole discretion of the FIRM. However, the FIRM shall only have the right to cancel the participation of that INSURER which has failed to maintain its status as a Surplus Lines Insurer or Authorized Insurer, has failed to maintain its A- rating and/or is declared insolvent. Cancellation must be initiated by the FIRM within 30 days from the latest date on which the INSURER lost its authority, was downgraded and/or was declared insolvent, via certified or registered mail, to the Insured's Representative as stated in the Policy Schedule. Notice of Cancellation should state when such coverage shall be terminated. Return premiums due to the Firm shall be calculated on a pro rata basis effective the date of cancellation. The effective date of cancellation shall be determined by the FIRM and shall take effect no earlier than the earliest date to

which the INSURER lost its authority, was downgraded and/or was declared insolvent. The failure of the FIRM to cancel such coverage immediately at the time of any of the above referenced provisions arising shall not preclude the FIRM from exercising such cancellation at a later date during the Period of Insurance provided such notice is within the aforementioned 30 days.

(b)    (i)    Unless mutually agreed otherwise by the FIRM and the INSURERS, upon expiration of the PERIOD OF INSURANCE the coverage afforded by this Policy shall be automatically extended for two one-year policy periods at the Premiums set forth in Items 7(b) and 7(c) of the Schedule, which premiums are subject to equitable adjustment only in the event that there shall be an increase or decrease in the number of lawyers at the FIRM, as described in Section IV-C (a) above. Such renewal policies shall be subject to the same terms, conditions and limitations as this Policy, except for the PERIOD OF INSURANCE and provisions which concern renewal and as otherwise provided herein.

(ii)    Notwithstanding the foregoing, unless otherwise mutually agreed, the INSURERS shall provide alternative terms, conditions and limitations for the further extension of this Policy for three additional one-year policy periods within 30 days of receipt of all required underwriting information from the FIRM which information is to be provided to the INSURERS no earlier than 120 days prior to the expiration of the PERIOD OF INSURANCE.

E.    **EXTENDED REPORTING PERIOD**

(a)    If, at the end of the PERIOD OF INSURANCE of this Policy and the two additional PERIODS OF INSURANCE provided for under the automatic extension of coverage as set forth in Clause D above, the INSURERS or INSURED shall elect not to further extend the PERIOD OF INSURANCE, the FIRM shall then have the right, in consideration of one of the additional premiums as outlined below, to an extension of the cover granted by this Policy to apply, subject to its terms, conditions, exclusions and limitations, in respect of any CLAIM made against any INSURED during the applicable time period after the expiration of the last PERIOD OF INSURANCE but only when such CLAIM arises out of ACTS committed prior to the expiration of the last PERIOD OF INSURANCE provided for under the Automatic Extension of this Policy.

| Extended Reporting Period Options | Additional Premium |
|---|---|
| 12 Calendar Months | 100% of last ANNUAL PREMIUM |
| 24 Calendar Months | 150% of last ANNUAL PREMIUM |
| 36 Calendar Months | 200% of last ANNUAL PREMIUM |

(b)    To exercise this right the FIRM must give notice of the exercise of such right in writing prior to the expiration of the last PERIOD OF INSURANCE provided for under the Automatic Extension and in the event of failure by the FIRM to give such notice prior to such date, it shall not on a later date be able to invoke this Extended Reporting Period. The mailing by the FIRM by registered mail of notice to the INSURED'S REPRESENTATIVE as stated in the Schedule shall be sufficient proof of notice.

(c)    Notwithstanding the foregoing, in the event that the FIRM exercises its rights to purchase the Extended Reporting Period hereunder, then Clause IV-A LIMITS and Clause IV-B RETENTION of the Policy shall be deleted in their entirety and replaced by the following which is effective for all CLAIMS made during the applicable Extended Reporting Period:

1.    LIMIT

The limit of liability of the INSURERS shall not exceed the sum stated in Item 8D of the Schedule for all CLAIMS made against all INSUREDS during the applicable EXTENDED REPORTING PERIOD, including reasonable costs, charges and expenses incurred in connection with any such CLAIM or CLAIMS.

2.    RETENTION

In respect of any CLAIM or CLAIMS covered under the EXTENDED REPORTING PERIOD, this Policy is only to pay excess of the Single Claim Retention provided in Item 9A of the Schedule which RETENTION shall apply separately to each and every CLAIM reported under the EXTENDED REPORTING PERIOD.

F.    CLAIMS PROCEDURES:

(a)    As a condition precedent to an INSURED's right to be indemnified under this Policy in respect of any CLAIM made against such INSURED, and to enable the INSURERS' REPRESENTATIVE to advise and assist in the defense of any CLAIM, and any suit or proceeding arising out of such CLAIM, the FIRM shall give to the INSURERS prompt notice in writing of such CLAIM and shall promptly and fully give to the INSURERS such information with regard to such CLAIM and any suit or proceeding arising out of such CLAIM, as the INSURERS may, from time to time, reasonably require and is in the FIRM's power. For the purposes of this Policy the date upon which a CLAIM is made against an INSURED shall be determinative of the date on which such CLAIM attaches to this Policy.

(b)    If during the PERIOD OF INSURANCE or the EXTENDED REPORTING PERIOD an INSURED shall become aware of any circumstance which may subsequently give rise to a CLAIM being made against it in respect of any ACT, and the FIRM shall, during the PERIOD OF INSURANCE or the EXTENDED REPORTING PERIOD, give written notice to INSURERS of

such circumstance, then any CLAIM which may subsequently arise out of such matters notified to the INSURERS shall, for the purpose of this Policy, be treated as a CLAIM made on the date on which such notice was given to the INSURERS.

For the purposes of giving notice to the INSURERS under Condition a) and b) above such notice shall be given to the INSURERS' REPRESENTATIVE stated in The Schedule. Thereafter such REPRESENTATIVE (or any substitute as may be subsequently appointed by INSURERS and advised to the FIRM) shall act on behalf of the INSURERS with respect to any such CLAIM or circumstance or notice.

(c)  An INSURED shall not be required to contest any CLAIM by judicial proceedings in the event such CLAIM can, by agreement with the claimant, be contested by arbitration in accordance with the rules then in use by the American Arbitration Association, the International Chamber of Commerce, or such other commercial arbitration rules as may be reasonably acceptable to the INSURERS. The FIRM shall give to the INSURERS' REPRESENTATIVE written notice of the intention to refer such CLAIM to arbitration. Such arbitration shall be considered a "proceeding" within the meaning of this Policy.

(d)  No CLAIM shall be settled by any INSURED without the consent of the INSURERS and the FIRM shall immediately notify the INSURERS' REPRESENTATIVE of any settlement offer made with respect to any CLAIM; provided that the foregoing shall not apply with respect to any CLAIM for which no coverage is sought by the INSUREDS under this Policy.

(e)  The INSURERS shall not have the right nor shall they be called upon to assume charge of the defense or settlement of any CLAIM made against any INSURED. The INSUREDS, as a condition precedent to the right to be indemnified under this Policy in respect of any such CLAIM, shall exercise their best efforts and cooperate fully with the INSURERS' REPRESENTATIVE in good faith in defending against such CLAIM, and keep the INSURERS' REPRESENTATIVE fully and contemporaneously informed as to the conduct of such defense, and ensure that counsel conducting such defense comply, in a timely manner, with the INSURERS' "Litigation Management Guidelines," in respect of such CLAIM. The INSURERS' REPRESENTATIVE shall have the right and be given the opportunity to approve in advance counsel selected by such INSURED to defend any CLAIM and to require the INSURED to revoke, only on the basis of good cause, such counsel's appointment; provided that it is agreed between the INSURERS and the INSURED that in the event of a dispute between the INSURERS' REPRESENTATIVE and an INSURED, counsel selected pursuant to this Clause IV-F(e) shall not represent any INSURED, in or with respect to, such dispute. If more than one INSURED is involved in a CLAIM, the INSURERS may withhold approval of separate counsel for one or more of such INSUREDS unless there is a material actual or potential conflict of interests among such INSUREDS.

(f)  To enable the INSURERS' REPRESENTATIVE to advise and assist in the defense of any CLAIM, the INSURED and its counsel will comply with the INSURERS' "Litigation Management Guidelines" as those guidelines may be promulgated or amended from time to time.

S:\SHARE\PSD\user\2001\Documents\Wording.doc13

12-096-00B
1/9/01

**G.    COSTS:**

    (a)    Subject to the terms, conditions, exclusions and limitations of this Policy, the INSURERS agree that they will pay all reasonable costs, charges and expenses incurred by the INSUREDS in connection with the defense of any CLAIM covered hereunder or circumstance for which the INSURED has notified the INSURERS' REPRESENTATIVE and only to the extent such costs have been approved in advance and in writing by the INSURERS' REPREREATATIVES and which may subsequently give rise to a CLAIM covered hereunder.

    (b)    The cost of any appeal, attachment or similar bonds required to be furnished in connection with the contest of any CLAIMS covered hereunder is included in the term "costs, charges and expenses."

    (c)    The term "costs, charges and expenses" shall include charges by the FIRM for time spent by its own partners and employees in participating with its counsel in the defense of a CLAIM covered hereunder or circumstance which may subsequently give rise to a CLAIM covered hereunder only to the extent approved in advance and in writing by the INSURERS' REPRESENTATIVE.

**H.    OTHER CONDITIONS:**

    (a)    This Policy is issued in reliance upon the particulars and statements contained in the Application. Any submission or omission of information in or from the Application shall be deemed continuing unless corrected in writing by the FIRM. In the event that the Application contains any information which is known by the FIRM to be false or fraudulent to any material extent or if the FIRM knowingly omits any material information required by the Application, the INSURERS shall have the right to void this Policy by written notice to the FIRM to that effect, effective, at the commencement of the PERIOD OF INSURANCE. In considering its right to void the Policy, the INSURERS shall be guided by what is fair and equitable to the INSURERS and the INSUREDS in the light of all relevant circumstances. In the event this Policy is voided by the INSURERS, this Policy shall not cover any CLAIMS which are pending at the effective date of such voidance, and any amounts paid by the INSURERS pursuant to this Policy after such effective date on account of any CLAIM shall be recoverable by the INSURERS. Notwithstanding the foregoing, if one or more INSUREDS (other than the FIRM) is responsible for the submission of the false or fraudulent information contained in the Application, or if one or more INSUREDS (other than the FIRM) is responsible for the omission of material information from the Application, this Policy may be voided by the INSURERS only as to such INSUREDS and any other INSUREDS who personally acquiesced in, or remained passive after having personal knowledge of, such wrongful submission or omission.

        (i)    If the FIRM shall make any CLAIM against the INSURERS knowing such CLAIM in any material part, to be false or fraudulent, this Policy shall become void and terminate automatically as of the date such CLAIM is made. In such event, this Policy shall not cover any CLAIMS then pending and any amounts paid by the INSURERS after such date of termination on

S:\SHARE\PSD\user\2001\Documents\Wording.doc:14

account of any CLAIM shall be recoverable by the INSURERS. Notwithstanding the foregoing, if one or more INSUREDS (other than the FIRM) is responsible for causing the FIRM to make a false or fraudulent CLAIM, this Policy shall become void and terminate only as to such INSUREDS and any other INSUREDS who personally acquiesced in, or remained passive after having personal knowledge of, such false or fraudulent CLAIM.

(ii) If the FIRM submits any information in connection with a valid CLAIM knowing such information to be false or fraudulent to any material extent or if the FIRM knowingly omits any material information with respect to any such CLAIM, this Policy shall be void as to such CLAIM. In such event, any amounts paid by the INSURERS pursuant to this Policy with respect to such CLAIM shall be recoverable by the INSURERS. Notwithstanding the foregoing, if one or more INSUREDS (other than the FIRM) is responsible for the submission by the FIRM of such false or fraudulent information, or if one or more INSUREDS (other than the FIRM) is responsible for the FIRM omitting such material information, this Policy shall be void as to such CLAIM only as to such INSUREDS and to any other INSUREDS who personally acquiesced in or remained passive after having personal knowledge of such wrongful submission or omission.

(b)  In the event that this Policy is voided by the INSURERS as to all INSUREDS under Clause IV-H (a), the INSURERS shall refund to the FIRM any premiums paid covering the PERIOD OF INSURANCE in question. There shall be no premium adjustment made if this Policy is voided only as to one or more individual INSUREDS.

I.  **PAYMENTS BY THE INSURERS:**

Any payments by the INSURERS to the INSUREDS shall be made in U.S. Dollars.

J.  **SUBROGATION:**

In the event of any payment under this Policy the INSURERS shall be subrogated to all of the INSURED's rights of recovery therefor against any person, and the INSUREDS shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The INSUREDS shall do nothing to prejudice such rights of subrogation.

Notwithstanding the foregoing, no rights of subrogation shall accrue to the INSURERS against any INSURED unless such INSURED shall have been adjudged or has admitted to have committed or personally acquiesced in (within the meaning of Clause III-D) active and deliberate fraud or dishonesty with actual fraudulent or dishonest purpose and intent in relation to matters which are the subject of the CLAIM in question; provided, however, that if any other INSURED seeks direct recovery against any INSURED, such recovery shall inure, to the extent of the amounts paid under this Policy, to the benefit of the INSURERS.

**K.   BANKRUPTCY AND INSOLVENCY:**

The bankruptcy or insolvency of the FIRM or any other INSURED, or the FIRM'S or an INSURED'S inability to pay a CLAIM settlement or judgment out of current cash operating accounts, shall not relieve the INSURERS of their obligation to pay a CLAIMS settlement or judgment made under this Policy except to the extent of the requirement of Clause IV-B(b) that payment by the INSUREDS of the RETENTION on a CLAIM is a condition precedent to an INSURED'S right to be indemnified in respect of such CLAIM.

**L.   ARBITRATION:**

(a)   All disputes which may arise between one or more INSUREDS (including persons claiming benefits under this Policy regardless of whether the INSURERS agree they are INSUREDS) and the INSURERS (including their directors, officers, employees or agents) out of or in relation to this Policy (including disputes as to its validity, construction or enforceability), or for its breach, shall be finally settled by arbitration held according to the Commercial Arbitration Rules of the American Arbitration Association, by which the INSUREDS and the INSURERS agree to be bound.  In addition to the rule governing such arbitration, the parties shall have at their disposal the broadest pre-trial discovery rights as are then available under the laws and judicial rules of the jurisdiction in which the arbitration is to be held, provided that any dispute between the parties relating to discovery shall be submitted to the arbitration panel for resolution.  Disputes regarding interim or ancillary relief pending a final decision of the arbitration panel in a matter hereunder shall also be submitted to the arbitration panel for resolution.

(b)   Unless the parties consent in writing to a lesser number, the arbitration panel shall consist of three (3) practicing attorneys, one (1) to be appointed by the INSUREDS, one (1) to be appointed by the INSURERS, and the third by the two (2) arbitrators so appointed.

(c)   The award of the arbitration panel may be, alternatively or cumulatively, for monetary damages, an order requiring the performance of the obligations under this Policy, or any other appropriate order or remedy.  The award shall assign all costs of the arbitration to one or both parties.  Judgment upon any award rendered in the arbitration may be entered by any court having proper jurisdiction.

(d)   For purposes of implementing this Clause IV-L, including entering judgment upon any award by the arbitration panel and enforcing any decision of the arbitration panel in respect of disputes over discovery or the availability of ancillary relief, the INSURERS and each of the INSUREDS hereby submit themselves to any competent jurisdiction in the United States.

S:\SHARE\PSD\enter\2001\Document\Wording.doc.16

M.    NO WAIVER OF RIGHTS:

Failure of the INSURERS to require the performance by the INSUREDS of any obligation under this Policy shall not affect their right to require performance of that obligation. Any waiver by the INSURERS of any breach of any provision of this Policy shall not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver or modification of the provision itself, or a waiver or modification of any right under this Policy.

N.    AMENDMENT OF POLICY TERMS:

To be effective, any amendment to this Policy must be by endorsement in writing issued by the INSURERS.

O.    ASSIGNMENT:

Assignment of this Policy or any interest under it, whether by operation of law or otherwise, shall not bind the INSURERS without their written consent.

P.    NOTICES:

Except as otherwise specifically stated in this Policy, all notices or other communications required or contemplated by this Policy shall be addressed:

(i)    if to the INSURERS, through the INSURED'S REPRESENTATIVE as named in the Schedule

(ii)    if to the FIRM, through the INSURED'S REPRESENTATIVE as named in the Schedule

Q.    LAW TO GOVERN:

The validity, construction and enforceability of this Policy shall be governed in all respects by the law of the State of the principal office of the FIRM without regard to conflicts of law principles.

R.    SEVERAL LIABILITY NOTICE:

The subscribing INSURERS' obligations under this contract of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. Each subscribing INSURER is not responsible for the subscription of any co-subscribing INSURER who for any reason does not satisfy all or part of its obligations.

**ARTER & HADDEN LLP**

**MINIDOM POLICY NO. 1015-00**

**ENDORSEMENT NO. 1**

**OPTIONAL POLICY EXTENSION**

It is understood and agreed that the INSURED has the option at the end of each of the PERIOD OF INSURANCE and the first AUTOMATIC EXTENSION PERIOD as stated in Items 5 and 6 respectively of the SCHEDULE, to purchase a 36 month policy extension with an aggregate SUM INSURED as stated in Item 8 of the SCHEDULE subject to one additional reinstated amount equal to the SUM INSURED. The premium for exercising this Conversion Option Endorsement is 225% of the annual premium for the expiring AUTOMATIC EXTENSION PERIOD which is due at the effective date of the optional policy extension. If the INSURED elects to exercise the optional policy extension hereunder they agree to waive all rights to an EXTENDED REPORTING PERIOD in accordance with IV CONDITION at the end of the optional policy extension.

The right to effect the Conversion Option Endorsement at 225% would be automatic subject only to the incurred (paid and reserved) losses to Underwriters in excess of applicable RETENTIONS not exceeding $10,000,000 at the effective date of the policy extension.

Furthermore, the INSURED only has the right to exercise this option if the attorney headcount of the Firm has not either increased or decreased by 25% or more from the total headcount declaration made by the Firm at the commencement of the current PERIOD OF INSURANCE as stated in Item 5 of the SCHEDULE.

*Deleted at December 31, 2000 Renewal*

## ARTER & HADDEN LLP

## MINIDOM POLICY NO. 1015-00

## ENDORSEMENT  NO. 2

## PREDECESSOR FIRMS

Predecessor Firms:

Knepper, White, Arter & Hadden
Hemmendinger, Whitaker & Kennedy
Arter, Hadden & Hemmendinger
Haynes & Miller
Arter & Hadden
Johnson, Blomberg & Leeds, LLP

**ARTER & HADDEN LLP**

**MINIDOM POLICY NO. 1015-00**

**ENDORSEMENT NO. 3**

**LAW TO GOVERN**

Q.    **LAW TO GOVERN:**

Except as otherwise set forth below the validity, construction and enforceability of this Policy shall be governed in all respects by the law of the State of Texas.

For purposes of determining the insurability of punitive damages, other exemplary damages, fines or penalties, under this Policy, the Insurers agree with the Insured that it is intended that coverage for punitive damages will be provided except to the extent that is uninsurable by law, and that to give effect to this intention, the law of jurisdiction permitting insurance coverage for punitive damages will apply for the sole purpose of interpreting this endorsement, provided that such jurisdiction:

a)    is where such punitive damages were awarded or imposed; or
b)    is where the act, error or omission occurred for which such punitive damages were awarded or imposed; or
c)    any other jurisdiction which the assured demonstrates applies to this policy.

It is further understood and agreed that if the choice of law provision set forth above is subject to final determination by the court, then the parties will abide by such final judicial determination, provided however, that the parties will take no position inconsistent with the intent of the endorsement which is to provide coverage for punitive damages where permitted by law as set forth above.

**ARTER & HADDEN LLP**

**MINIDOM POLICY NO. 1015-00**

**ENDORSEMENT NO. 4**

**CLAIMS PROCEDURES**

F.   **CLAIMS PROCEDURES:**

(a)  As a condition precedent to an INSURED's right to be indemnified under this Policy in respect of any CLAIM made against such INSURED, and to enable the INSURERS' REPRESENTATIVE to advise and assist in the defense of any CLAIM, and any suit or proceeding arising out of such CLAIM, the FIRM shall give to the INSURERS prompt notice in writing of such CLAIM and shall as soon as practicable give to the INSURERS such information with regard to such CLAIM and any suit or proceeding arising out of such CLAIM, as the INSURERS may, from time to time, reasonably require and is in the FIRM's power. For the purposes of this Policy the date upon which a CLAIM is made against an INSURED shall be determinative of the date on which such CLAIM attaches to this Policy.

(c)  If during the PERIOD OF INSURANCE or the EXTENDED REPORTING PERIOD an INSURED shall become aware of any circumstance which may subsequently give rise to a CLAIM being made against it in respect of any ACT, and the FIRM shall, during the PERIOD OF INSURANCE or the EXTENDED REPORTING PERIOD, give written notice to INSURERS of such circumstance, then any CLAIM which may subsequently arise out of such matters notified to the INSURERS shall, for the purpose of this Policy, be treated as a CLAIM made on the date on which such notice was given to the INSURERS.

For the purposes of giving notice to the INSURERS under Condition  a) and b) above such notice shall be given to the INSURERS' REPRESENTATIVE stated in The Schedule. Thereafter such REPRESENTATIVE (or any substitute as may be subsequently appointed by INSURERS and advised to the FIRM) shall act on behalf of the INSURERS with respect to any such CLAIM or circumstance or notice.